**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JOANNE M. TURNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:13-CV-1458-B (BF) |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Joanne M. Turner brings this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's ("Commissioner's") final decision denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the following reasons, the Commissioner's decision should be REVERSED.

**Background**

Plaintiff alleges that she is disabled due to a variety of ailments, including diabetes, neuropathy, Sjogren's syndrome, asthma, allergies, restless leg syndrome, hot flashes, pain, and muscle spasms. After her application for DIB was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on September 14, 2011. At the time of the hearing, Plaintiff was 51 years old. She has a high school education, training as a nurse's assistant and a medical technician, and past work experience as a certified nursing assistant, production worker, hand packager, driver, photo checker, and mail sorter. Plaintiff has not engaged in substantial gainful activity since July 20, 2010.

The ALJ found that Plaintiff was not disabled and therefore not entitled to DIB. Although the medical evidence established that Plaintiff suffered from diabetes mellitus, history of right shoulder impingement, Sjogren's syndrome, and depression, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform her past relevant work as a production worker, hand packager, certified nurse's aide, driver, photo checker, and mail sorter. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court challenging the hearing decision on three general grounds: (1) the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence and results from reversible legal error; (2) the ALJ improperly evaluated the severity of Plaintiff's fibromyalgia; and (3) the ALJ posed an improper hypothetical question to the vocational expert that resulted in a disability determination that is not supported by substantial evidence. The parties have fully briefed the issues, and the matter is ripe for determination.

**Legal Standards**

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are that:

(1) an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

(2) an individual who does not have a "severe impairment" will not be found to be disabled;

(3) an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

(4) if an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" will be made; and

(5) if an individual's impairment precludes the individual from performing the work the individual has done in the past, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (paraphrasing 20 C.F.R. § 404.1520(b)-(f)).

The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry. *Leggett*, 67 F.3d at 564. The burden of proof shifts to the Commissioner at step five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)). If the Commissioner demonstrates that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan* , 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits was supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

**Analysis**

Plaintiff initially challenges the ALJ's determination that she retained the RFC to perform a limited range of light work. *See* Pl. Br. at 10-15. Specifically, the ALJ found that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk 6 hours in an 8-hour worday, and sit 6 hours in an 8-hour worday. Tr. at 28. However, Plaintiff could only occasionally climb ramps and/or stairs, and she could never climb ladders, ropes, and/or scaffolds. *Id.* Plaintiff would further be unable to balance and could only occasionally stoop, crouch, kneel, or crawl. *Id.* at 28-29. She could frequently reach, handle, and finger, but she would need to avoid concentrated exposure to temperature or weather extremes and working near hazards, including unprotected heights, open flames, or driving a motor vehicle. *Id.* at 29. Plaintiff also retained the ability to engage in occasional contact with coworkers and supervisors and incidental contact with the public and to perform detailed, not complex, instructions. *Id.* Relying on this RFC, the ALJ determined that Plaintiff could return to her past relevant work and, thus, was not disabled under the

Act. *Id.* at 31. Plaintiff contends, however, that the ALJ's determination that she (1) could frequently reach, handle, and finger and (2) had the ability to engage in occasional contact with coworkers and supervisors and incidental contact with the public and could perform detailed, but not complex, instructions is not supported by substantial evidence. Pl. Br. at 10-15. According to Plaintiff, the ALJ rejected all the medical source opinions relevant to her physical and mental RFC and impermissibly acted as her own medical expert, substituting her own medical determinations about Plaintiff's condition for those of Plaintiff's doctors and the state agency physician. *Id.* Plaintiff argues that the ALJ's lay assessment of the medical evidence violates the Fifth Circuit's ruling in *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) and the resulting decision must be reversed.

The RFC assessment is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8P, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Stated differently, the RFC is a determination of what an individual can still do despite his or her limitations; it represents "not the *least* an individual can do . . . but the *most*." *Id.* An individual's RFC should be based upon all of the relevant evidence in the case record, including opinions submitted by treating physicians and other acceptable medical sources. 20 C.F.R. § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1. It is the ALJ's responsibility to determine an individual's RFC. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). Generally, an ALJ should request a medical source statement that describes the types of work the individual can still perform. *Ripley*, 67 F.3d at 557. The absence of such a statement is not reversible error if the ALJ's decision is nevertheless supported by substantial evidence. *Id.* Reversal is warranted only if the claimant shows that she was prejudiced. *Id.*

The medical evidence in this case includes opinions by Plaintiff's treating doctors and a state agency physician. In January 2011, a state agency physician determined that Plaintiff could not perform any of her past relevant work but could do other work that was less demanding. Tr. at 260. Specifically, the doctor found that Plaintiff had no manipulative limitations and was physically capable of light work. *Id.* at 256, 258. On August 15, 2011, Plaintiff's treating rheumatologist, Guillermo Quinceno, M.D., completed a Residual Functional Capacity Questionnaire indicating that Plaintiff's impairments had a more severe effect on her ability to work. *Id.* at 444. In particular, Dr. Quinceno opined that Plaintiff's conditions and symptoms significantly limited her ability to do repetitive reaching, handling, and fingering. *Id.* at 445. According to Dr. Quinceno, Plaintiff could use her arms and hands for 30% of the day and her fingers for only 20% of the day. *Id.* Dr. Quinceno also opined that Plaintiff's arthritis, fatigue, malaise, and other symptoms would "frequently" interfere with her attention and the concentration required to perform simple work-related tasks and that her "cognitive impairment" would affect her ability to work at a regular job on a sustained basis. *Id.* at 444-45. Plaintiff's primary care physician, Allan Kaye, M.D., also completed a Residual Functional Capacity Questionnaire dated August 28, 2011. Dr. Kaye similarly opined that Plaintiff's symptoms, including severe depression, muscle and joint pain, episodic confusion, fatigue, severe dyspnea, headaches, and poor balance, would "constantly" interfere with her attention and the concentration required to perform simple work-related tasks. *Id.* at 470. Dr. Kaye also opined that "recent episodes of altered cognition (fugal state)" would affect Plaintiff's ability to work at a regular job on a sustained basis and that her "severe depression precludes functional interaction with peers." *Id.* at 471.

The ALJ rejected all of these medical source opinions. *Id.* at 30-31. In particular, the ALJ found the opinions of Dr. Kaye and Dr. Quinceno "unpersuasive," in large part because she considered those opinions to be inconsistent with the doctors' own treatment notes. *Id.* at 30. The ALJ determined that many of Plaintiff's reported symptoms likely were the result of noncompliance with recommended treatment. *See id.* at 30-31. The ALJ stated that she was convinced that Plaintiff's fatigue and malaise would "improve with dietary compliance and the regular use of medication as prescribed." *Id.* at 31. She then attempted to give Plaintiff "every benefit of the doubt" and incorporated limitations into her RFC for (1) frequent, not constant, reaching, handling, and fingering and (2) only occasional contact with coworkers and supervisors, incidental contact with the public, and detailed, but not complex, instructions. *Id.* The ALJ noted that her RFC determination was based on a different interpretation of the evidence reviewed by the state agency physician and other evidence that was not available to him. *Id.* at 31.

Without the opinions of Dr. Kaye, Dr. Quinceno, and the state agency physician, however, there was no medical opinion evidence in the record regarding the effects of Plaintiff's severe impairments on her ability to work. The ALJ was not entitled to simply rely on her own opinion of the medical evidence to determine the effects of Plaintiff's condition on her ability to work. *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 ( 5th Cir. 2009) ("[A]n ALJ may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions."); *see also Nesbitt v. Colvin*, No. 3:12-CV-98-BN, 2013 WL 5299261, at *5 (N.D. Tex. Sept. 20, 2013) ("While the ALJ may choose to reject [a doctor's] opinions, she cannot then independently decide the effects

7

of Plaintiff's mental impairments on her ability to perform work-related activities, as that is prohibited by *Ripley*."); *Shugart v. Astrue*, No. 3:12-CV-1705-BK, 2013 WL 991252, at *5 (N.D. Tex. Mar. 13, 2013) (same). Yet, this is exactly what the ALJ did. *See* Tr. at 29-31. Nor was the ALJ's error harmless. Had she obtained an expert medical opinion about the types of work activities that Plaintiff could still perform given her impairments, it might have changed the result of the ultimate disability determination. Indeed, none of the medical source statements in the record concluded that Plaintiff was capable of performing her past relevant work.

The Commissioner argues that substantial evidence nevertheless supports the ALJ's RFC determination. Def. Resp. at 5-6. However, the Commissioner points only to medical records which show "very little in the way of objective physical findings" and fails to identify any evidence to support the ALJ's findings concerning the effects of Plaintiff's undisputed severe impairments on her work-related abilities. The evidence which merely describes Plaintiff's medical conditions is insufficient to support the ALJ's RFC determination. *Ripley*, 67 F.3d at 557; *Moreno v. Astrue*, No. 5:09-CV-123-BG, 2010 WL 3025525, at *3 (N.D. Tex. June 30, 2010), *rec. adopted*, 2010 WL 3025519 (N.D. Tex. Aug. 3, 2010). Accordingly, remand is required. *Nesbitt*, 2013 WL 5299261, at *4 (remand required where record lacks substantial evidence to support ALJ's findings concerning the effects of claimant's work-related abilities); *Shugart*, 2013 WL 9911252, at *6 (same); *Newman v. Astrue*, No. 3:11-CV-2033-B-BK (N.D. Tex. July 16, 2012), *rec. adopted*, 2012 WL 3104648, at *1 (N.D. Tex. July 13, 2012) (same); *Newsome v. Barnhart*, No. 3:03-CV-3030-D, 2004 WL 3312833, at *4 (N.D. Tex. Oct. 8, 2004) (same).

Because a remand is required based on the ALJ's error in determining Plaintiff's RFC, the Court pretermits consideration of Plaintiff's remaining arguments regarding the ALJ's evaluation

8

of the severity of her alleged fibromyalgia and the hypothetical question posed to the vocational expert. Upon remand, the ALJ should consider evidence of Plaintiff's fibromyalgia diagnosis in accordance with SSR 12-2p, 2012 WL 3104869 (S.S.A. July 25, 2012), which was issued after the ALJ's decision in this case and provides guidance for evaluating fibromyalgia in disability claims.[1]

## RECOMMENDATION

The District Court should REVERSE the final decision of the Commissioner, and REMAND this case for further proceedings consistent with this opinion.

SO RECOMMENDED, August 29, 2014.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the

---

[1] By recommending that this case be remanded for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled.

9

district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).